**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ESSIE LEMIEUX, ET AL.**                                              **CIVIL ACTION**

**VERSUS**                                                                    **NO. 16-16508**

**CSR LTD., ET AL.**                                                        **SECTION "B"(5)**

### ORDER AND REASONS

Before the Court is Defendant "American Optical Corporation's Rule 12(b)(6) Motion to Dismiss." Rec. Doc. 9. Plaintiff timely filed a memorandum in response. Rec. Doc. 13. Defendant then requested, and was granted, leave to file a reply memorandum. Rec. Doc. 17. For the reasons discussed below,

**IT IS ORDERED** that the motion to dismiss (Rec. Doc. 9) is **GRANTED.**

### I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the death of Raymond J. Lemieux, Sr. ("Decedent"). From February 29, 1956 through February 23, 1970, Decedent was employed by the Johns-Manville Corporation at its Marrero, Louisiana facility. Rec. Doc. 1 at ¶ 7. While employed under various job titles, Decedent wore the R9100 respirator designed by Defendant American Optical Corporation ("Defendant") and was exposed to asbestos supplied by Defendant CSR Ltd. ("CSR"). *Id.* at ¶¶ 7-8. As a result of this exposure, Decedent "developed asbestos-related lung cancer, which caused his death on December 18, 2015." *Id.* at ¶ 10.

1

After Decedent was diagnosed with lung cancer on June 15, 2009, he entered into settlement discussions with Defendant American Optical. Rec. Doc. 1 at ¶¶ 19-20. Decedent's wife and children were unaware of these discussions, but were eventually asked to sign a release of their future claims as a condition of Decedent's settlement with Defendant American Optical. *Id.* at ¶¶ 21-22. Even though they were not represented by their own counsel, did not understand "the nature or value of their future claims," and "receiv[ed] no compensation for release of their claims," Decedent's wife and children signed the release. *Id.* at ¶¶ 21, 23-24. Because they were not represented by their own counsel, Decedent's wife and children now seek a declaratory judgment under Louisiana Code of Civil Procedure 1871 that the release is null and void and vitiating their consent thereto. *Id.* at ¶ 26.

On November 22, 2016, Decedent's widow, Essie Lemieux, and surviving children, Raymond J. Lemieux, Jr. and Dehon Lemieux Callier, ("Plaintiffs") filed suit against CSR and American Optical. Rec. Doc. 1. As to Defendant American Optical, Plaintiffs claimed that the R9100 was advertised "as providing adequate respiratory protection against the inhalation of pneumoconiosis-producing dust, including asbestos," when it actually "allowed asbestos fibers to penetrate into the breathing zone of the wearer, causing dangerous amounts of asbestos fibers to be inhaled . . . ." *Id.* at ¶ 15. Accordingly, Plaintiffs argue that the R9100 was

defectively designed and contained an inadequate warning and that Defendant American Optical fraudulently marketed the R9100 as approved by the Bureau of Mines, in violation of Louisiana Civil Code article 1953 and 15 U.S.C. §§ 1125(1) and (2). *Id.* at ¶¶ 15-16, 18. Plaintiffs claim damages for funeral and burial expenses, loss of consortium, loss of love and affection, loss of support, loss of services, and for mental pain and anguish, as well as damages and attorneys' fees for the fraudulent marketing and advertising of the R9100. *Id.* at ¶¶ 25-26.[1]

On January 30, 2017, Defendant American Optical filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. Rec. Doc. 9.

II.  **THE PARTIES' CONTENTIONS**

Defendant argues that Decedent filed suit against it in Louisiana state court and that this suit was resolved when Decedent and Plaintiffs entered into a settlement agreement with Defendant in February of 2011. Rec. Doc. 9-1 at 1. Pursuant to the agreement, Defendant agreed to pay Decedent and Plaintiffs "a confidential sum in exchange for a release that bars all claims against [Defendant] relating to [Decedent's] asbestos exposure, including 'all wrongful death claims or causes of action . . . that they may have in the future upon the death of their husband and father,

---

[1] Note, the paragraphs in the complaint are numbered incorrectly; consequently, paragraphs 25 and 26 appear on both pages 8 and 9. The paragraphs referring to damages are found on page 9.

Raymond Lemieux, Sr.'" *Id.* at 1-2 (citing Rec. Doc. 9-2).[2] Defendant argues that (1) "Plaintiffs are barred from seeking annulment of [this agreement] under Louisiana Civil Code article 2032 because more than five years have passed since the [a]greement was reached"; and (2) even if they were not so barred, "the facts that they allege are not grounds for voiding a settlement agreement under settled Louisiana law." *Id.* at 2 (citing *Daigle v. Clemco Indus.*, 92-0604 (La. 2/1//93); 613 So. 2d 619, 621).

### III.  **LAW AND ANALYSIS**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party can move to dismiss a complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *see also Twombly*, 550 U.S. 544. Such motions are viewed with

---

[2] Rec. Doc. 9-2 contains the "Receipt, Release and Indemnity Agreement" signed by Decedent and Plaintiffs on February 10, 2011. It specifically provides that "Essie Lemieux, Dehon Callier and Raymond Lemieux, Jr. who are, respectively, the wife and only living children of Raymond Lemieux, Sr., specifically appear to relieve, release and discharge the released parties of and from any and all wrongful death claims or causes of action and damages, including those arising under Louisiana Civil Code article 2315.2, that they may have in the future upon the death of their husband and father, Raymond Lemieux, Sr., against the released parties, or any of them, arising out of or in any way associated with the acts or omissions, diseases or conditions, covered by this release and described herein. These appearers acknowledge that they have received good and valuable consideration for their release of their possible future wrongful death claims as stated herein. These appearers further acknowledge that, by their execution of this agreement, they shall have no right to sue or bring any action of any kind against the released parties, or any of them, arising out of or based upon the death of Raymond Lemieux, Sr., or arising out of or in any way associated with the acts or omissions, diseases or conditions covered by this release." Rec. Doc. 9-2 at 2. Defendant American Optical, "its employees, officers, agents, directors and shareholders, predecessor, parent and affiliated corporations, successors and assigns, as well as their insurers" are identified in the release as the "released parties." *Id.* at 1. The document was initialed by Decedent and Plaintiffs on each page (*id.* at 1-4), signed by each on the last page (*id.* at 5), witnessed (*id.*), and notarized (*id.* at 6-9).

disfavor and rarely granted. *Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982)). Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, when reviewing a motion to dismiss, courts must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

Generally, the Court may only consider the pleadings on a motion to dismiss for failure to state a claim. *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499

(5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)) (other citations omitted) (approving of the district court's consideration of documents attached to a motion to dismiss in part because the plaintiffs did not object to, or appeal, the district court's consideration of the documents). "In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.*; *see also Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (where the Fifth Circuit determined that the district court properly considered two Equal Employment Opportunity Commission ("EEOC") charges attached to the defendant's motion to dismiss, because the charges were essential to determining whether they were filed within the applicable statute of limitations and whether the allegations contained in them alleged a colorable violation of Title VII; according to the Fifth Circuit, "[t]hese issues are central to [the plaintiff's] pleadings, and her failure to include them does not allow her complaint to bypass [the defendant's] motion to dismiss unexamined"); *Borders v. Chase Home Fin. L.L.C.*, No. 09-3020, 2009 WL 1870916, at *5 (E.D. La. June 29, 2009) ("because the Settlement agreement documents attached to [the defendant's] motion are referenced in Plaintiff's complaint, central to—and in fact entirely dispositive of—plaintiff's claims, and because Plaintiff

6

has not questioned the substantive validity of the documents, the Court finds that the documents are properly submitted in the context of the present motion").

Here, Plaintiffs do not explicitly object to the Court's consideration of the release on Defendant's motion to dismiss. The release was referred to by Plaintiffs in their complaint (*see* Rec. Doc. 1 at ¶¶ 19-26), likely in anticipation of Defendant's arguments, and, in their memorandum in opposition to Defendant's motion, Plaintiffs simply argue that the release is null—not that they should not be considered on a motion to dismiss. The only mention of this issue is when Plaintiffs stated that Defendant "attached the Release executed by Plaintiffs to their Motion to Dismiss in an apparent attempt to invite the Court to treat their Motion as a Rule 56 Motion for Summary Judgment" (Rec. Doc. 13 at 3) and that "if this occurs, all parties must be given a reasonable opportunity to present all material pertinent to the motion" (*id.* at 9).

The Court finds that the release is properly considered as part of the pleadings and therefore as part of Defendant's motion to dismiss. The release is explicitly mentioned in Plaintiffs' complaint, Plaintiffs do not object to the Court's consideration of the release, the release is essential to determining whether or not Plaintiffs' claim that the release is null is prescribed, and

the release is central to (and potentially dispositive of) Plaintiffs' claims.[3]

### A. ARE PLAINTIFFS BARRED FROM ARGUING THAT THE SETTLEMENT AGREEMENT IS NULL?

Under Louisiana law, an "[a]ction for annulment of an absolutely null contract does not prescribe." LA. CIV. CODE ANN. art. 2032. However, an action to annul "a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud." *Id.* According to Louisiana case law, "the reasonableness of the plaintiff's action or inaction is a fundamental precept that the court must focus on in determining when prescription commences." *Sepulvado v. Procell*, 12-271 (La. App. 3 Cir. 10/3/12); 99 So. 3d 1129, 1135 (citing *Tiger Bend, L.L.C. v. Temple-Inland, Inc.*, 56 F. Supp. 2d 686 (M.D. La. 1999)). Accordingly, the doctrine of *contra non valentem*, which provides that prescription commences on the date the inured party

---

[3] Nonetheless, even if the motion is properly considered as a motion for summary judgment, the Court's ultimate decision on the motion remains unchanged. The standard on a motion for summary judgment is different from the standard on a motion to dismiss; namely, if the available evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, Plaintiffs were given an opportunity to respond to Defendant's motion, aware that the Court might treat the motion as a motion for summary judgment; yet, after Defendant submitted the release, which it believed demonstrated the absence of a genuine issue of material fact, Plaintiffs failed to present any evidence to establish a genuine issue. Thus, whether considered a motion to dismiss or a motion for summary judgment, the Court ultimately finds in favor of Defendant.

discovers or should have discovered facts upon which his cause of action is based, "will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." *Id.* (quoting *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1322 (La. 1979)).

The release entered into by Plaintiffs was signed and dated on February 10, 2011. Rec. Doc. 9-2. According to Defendant, "Plaintiffs filed this lawsuit more than five years after they entered into the Settlement Agreement, when they were fully aware of the facts that allegedly give rise to the nullity, including the fact that they were not represented by independent counsel and were not receiving any direct compensation." Rec. Doc. 9-1 at 7-8.

Plaintiffs appear to argue that that the prescriptive period in this case did not begin to run until their alleged error or Defendant's alleged fraud was discovered. Rec. Doc. 13 at 2. Specifically, they claim that "they did not understand that they had future individual claims that might arise upon [their] husband's/father's death and, therefore, did not knowingly release those claims. Additionally, Plaintiffs asserted that [Defendant] misrepresented to Plaintiffs that they had legal counsel with regard to the Release document. They did not." *Id.* Plaintiffs

further argue that the release does not "support a claim that the five year prescriptive period should begin in 2011," because (1) "the language regarding 'wrongful death claims' is much too vague and indiscernible to suggest that lay people . . . should have known that they were releasing future individual claims"; (2) the release misrepresents the role of Decedent's counsel and Defendant's allegedly misled "Plaintiffs into believing that they could rely on [Decedent's counsel]"; (3) the release did not disclose Decedent's counsel's conflict of interest; and (4) it was only after Decedent's death in 2015 that Plaintiffs discovered these errors and misrepresentations, so it was only then that the prescriptive period began to run. *Id.* at 9.[4]

In its reply memorandum, Defendant argues that Plaintiffs' failure to discover their alleged error was unreasonable:  the language of the release was clear and Plaintiffs could have asked Decedent's counsel for an explanation or hired independent counsel. Rec. Doc. 17 at 6–7.

Plaintiffs' arguments as to why their claim is not prescribed are without merit.

---

[4] Plaintiffs further argue that the face of the complaint does not contain any information that would suggest that the five-year prescriptive period began running in 2011. Rec. Doc. 13 at 8. Instead, the only date referenced in the complaint is the 2015 date of Decedent's death. *Id.* However, the Court has already determined that the release is properly considered part of Plaintiffs' complaint and the release provides that it was signed on February 10, 2011. Rec. Doc. 9-2.

First, Plaintiffs essentially argue that the claim for nullity is not prescribed because the release is null. This is a circular argument. Plaintiffs do not claim that the release is absolutely null (as will be discussed below). Instead, they claim that the release is relatively null because of error or fraud. Such claims must be raised within five years and cannot be used as a basis for tolling or otherwise adjusting the prescriptive period.

Second, Plaintiffs claim that they did not discover the error or fraud until after Decedent's death in 2015. However, this Court agrees with Defendant—the alleged basis for Plaintiffs' error and Defendant's alleged fraud were apparent at the time the release was signed. Plaintiffs should have discovered the bases for these claims at that time; their ignorance can only be attributable to their willfulness or neglect. In other words, Plaintiffs are deemed to have known of these facts at the time the release was signed. Consequently, Plaintiffs' claim that the release is null is barred by Louisiana Civil Code article 2032.

Nonetheless, even if Plaintiffs' claim were not so barred, the claim is without merit.

**B. IS THE RELEASE NULL?**

In Louisiana, "[a] contract is null when the requirements for its formation have not been met." LA. CIV. CODE ANN. art. 2029. Further, a contract may either be absolutely null or relatively null. Significantly, "[a]n absolutely null contract, or a

11

relatively null contract that has been declared null by the court, is deemed never to have existed." LA. CIV. CODE ANN. art. 2033.

### 1. IS THE RELEASE ABSOLUTELY NULL?

"A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." LA. CIV. CODE ANN. art. 2030.

Defendant argues that Louisiana law specifically recognizes the type of release at issue here. Rec. Doc. 9-1 at 10-11 (citing *Daigle*, 613 So. 2d 619).

In *Daigle*, a man was exposed to industrial abrasives during his employment, ultimately resulting in his death. 613 So. 2d at 621. During his lifetime, however, he filed suit against the executive officers of his employers and the manufacturers of the safety equipment he used while employed. *Id.* He eventually settled his claims with the defendants and dismissed the suit after his children signed "a release in favor of the defendants 'in order to induce certain defendants . . . to make a compromise settlement with their father . . . .'" *Id.* His wife also signed a release, granting to the defendants a release of all of her rights, past and future, and those of her minor children. *Id.* They signed the releases "with the full benefit of counsel," but the injured man, alone, received monetary consideration. *Id.* After the man died, his wife and children sued the defendants, who raised the peremptory exception of res judicata. *Id.* at 621-22. The trial

12

court judge denied the exception; the appellate court affirmed in part, invalidating the releases made on behalf of the man's minor children, but otherwise finding the waivers valid and deserving of res judicata effect. *Id.* at 620. The Louisiana Supreme Court affirmed, specifically noting that "the compromise does not produce a result against public policy or public order." *Id.* (citing LA. CIV. CODE ANN. arts. 1968, 2030).

Based on this case law, and the fact that Plaintiffs merely argue that the release was based on error and Defendant's misrepresentations (both of which would result in a relatively null contract), the Court finds that the release is not absolutely null.

### 2. IS THE RELEASE RELATIVELY NULL?

"A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made." LA. CIV. CODE ANN. art. 2031; *see also Petrohawk Props., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 391 (5th Cir. 2012). "There is no express constitutional or legislative prohibition against the settlement of a potential wrongful death claim after injury has occurred but before the tort victim's demise." *Daigle*, 613 So. 2d at 620. Consequently, "the compromise of a prospective wrongful death claim has res judicata effect <u>if</u> there is no error, fraud, duress or undue influence which vitiates

13

the consent of the potential wrongful death beneficiary." *Id.* at 620-21 (emphasis added).

In their complaint, Plaintiffs argue that (a) they were not represented by their own counsel during Decedent's settlement negotiations with Defendant and that Decedent's counsel "had an irreconcilable conflict of interest"; (b) they did not understand "the nature or value of their future claims"; (c) they were "under emotional pressure to assist [Decedent]"; and (d) they received no compensation for the release of their claims. Rec. Doc. 1 at ¶¶ 21, 23-24.

### a. INDEPENDENT COUNSEL AND DECEDENT'S COUNSEL'S ALLEGED CONFLICT OF INTEREST

Louisiana law recognizes that "[a]ll persons have capacity to contract, except unemancipated minors, interdicts, and persons deprived of reason at the time of contracting." LA. CIV. CODE ANN. art. 1918. Consequently, "[t]he presumption is that all persons have capacity to contract; lack of capacity must be shown by clear and convincing evidence." *Skannal v. Bamburg*, 44,820 (La. App. 2 Cir. 1/27/10); 33 So. 3d 227, 236, *writ denied sub nom.*, 10-0707 (La. 5/28/10); 36 So. 3d 254 (citations omitted). Further, "[i]f any contract could be nullified . . . because no independent counsel was present to advise the party and read the document to him before signing, then virtually all real estate, auto and securities transactions would be vulnerable." *Id.* at 236.

According to the acknowledgments signed by Plaintiffs, each declared to a notary that they executed the release of their own free will, "after having read said instrument in full, or having said instrument read to her [or him] in full, and having discussed the terms thereof with her [or his] attorney." Rec. Doc. 9-2 at 7-9.

Plaintiffs argue that the release demonstrates that Defendant misrepresented the role of Decedent's counsel. Rec. Doc. 13 at 3. Specifically, they note that the release states that "We hereby instruct our attorneys, Rodney P. Vincent and [his] firm . . . to dismiss the lawsuit with prejudice as against the released parties," "[a]ppearers and appearers' counsel have reviewed the underlying facts," "[i]n agreeing to enter into this Settlement, released parties, their attorneys and insurer(s) . . . ." Rec. Doc. 9-2 at 2-3 (emphasis added).[5] According to Plaintiffs, Defendant knew or should have known, based on its negotiations with Decedent's counsel, that Decedent's counsel only represented Decedent and that Decedent's counsel "would have a conflict of interest between consummating the settlement for his client (and earning his fee) and, on the other hand, persuading [Plaintiffs]

---

[5] Notably, the third sentence cited by Plaintiffs refers to Defendant, its successors and assignees, and their attorneys, because the release provides that Defendant and its associated entities are the "released parties." Rec. Doc. 9-2 at 1 ("American Optical Corporation . . . , its employees, officers, agents, directors and shareholders, predecessor, parent and affiliated corporations, successors and assigns, as well as their insurers (hereinafter collectively referred to as 'released parties') . . . ") (emphasis added).

to execute the Release for no additional consideration." Rec. Doc. 13 at 4.[6] Plaintiffs direct this Court to Louisiana Rule of Professional Conduct 1.7(a)(2), which provides that a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." Thus, Plaintiffs maintain that Decedent's counsel could not ethically represent them without obtaining their written consent to the conflict. *Id.* at 4.

Defendant responds that "Plaintiffs fail to show how [Defendant] is subject to these rules [of professional conduct], much less how it could have violated them, or even that a violation of these rules is sufficient to warrant nullification of a contract." Rec. Doc. 17 at 2.

The Court agrees with Defendant. Plaintiffs' allegations suggest that Decedent's counsel acted in an unethical way. However,

---

[6] Plaintiffs repeatedly blame Defendants for this alleged conflict of interest. *See, e.g.* Rec. Doc. 13 at 4 ("And, clearly, American Optical, who was being represented by both national and Louisiana counsel, knew or should have known that requiring [Decedent's counsel] to act as attorney for both [Decedent] and for his family created a conflict of interest that would work to the detriment of [Plaintiffs'] interest[s]"); 5 ("American Optical should have known that advice provided by [Decedent's counsel] to [Plaintiffs] regarding their signing of the Release would also conflict with Louisiana Rule of Professional Conduct (2017) Rule 4.3, which . . . mandates that a 'lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the [lawyer's] client.' Here, [Decedent's counsel's] advice to Plaintiffs to assist their husband/father by signing the Release in order to secure his client's settlement with American Optical, at the behest of American Optical, clearly violated this Rule.").

16

Plaintiffs fail to explain why it was Defendant's responsibility to ensure that Decedent's counsel behaved in a professional manner or why it was Defendant's responsibility to inform Plaintiffs of the desirability of seeking independent counsel. Plaintiffs fail to allege that Defendant acted unprofessionally. The release signed by Plaintiffs tends to indicate that Plaintiffs were represented by counsel. This may be false—and, at this stage, must be accepted as false based on Plaintiffs' allegations. However, Plaintiffs signed the release. It was their responsibility, not Defendant's, to correct any mistakes contained therein before signing. Plaintiffs simply fail to persuade the Court that Defendant acted in a fraudulent way by providing a release that suggested that Plaintiffs were represented by counsel. Therefore, fraud did not vitiate Plaintiffs' consent to the release.

### b. PLAINTIFFS' UNDERSTANDING OF THE CLAIMS

Plaintiffs argue that the complaint alleges that "they did not know that, by signing the Release, they would be releasing their own individual claims that might arise upon their husband's/father's death." Rec. Doc. 13 at 2. Instead, they believed that they were "signing the Release as a courtesy to their father, **regarding his claims** . . . ." *Id.* at 3 (emphasis in original). Plaintiffs further argue that, because they did not have independent counsel, "no one explained the vague reference in the Release to 'wrongful death claims' to them . . . ." *Id.* at 4.

17

Defendant correctly notes, however, that the release explicitly provides that Plaintiffs

> specifically appear[ed] to . . . release . . . the <u>released parties of and from any and all</u> wrongful death claims <u>or causes of action and damages</u>, including those arising under Louisiana Civil Code article 2315.2, that <u>they may have in the future upon the death of their husband and father</u> . . . against the released parties . . . arising out of or in any way associated with the acts or omissions, diseases or conditions, covered by this release and described herein.

Rec. Doc. 9-2 at 2 (emphasis added). According to Defendant, "[i]t is difficult to imagine how this language could be more clear . . . ." Rec. Doc. 17 at 3. "Plaintiffs have not and cannot point to any ambiguous portion of the language which would leave any room for error as to which potential claims they effectively waived or which would suggest to them that they waived only the claims which could have been asserted by [Decedent] . . . ." *Id.* at 3-4.

Again, the Court agrees with Defendant. The release specifically referred to <u>their</u> claims. The language of the release leaves no room for error. If Plaintiffs did not understand the meaning of "wrongful death claims," it was their responsibility to research the meaning before signing. Plus, even if Plaintiffs did not understand the reference to "wrongful death claims," they certainly must have understood the reference to <u>their</u> claims that might arise <u>in the future</u> <u>upon the death</u> of their husband/father.

Any error made by Plaintiffs was inexcusable and "reasonable persons could not disagree the alleged error . . . was easily

detectable and could have been rectified by a minimal amount of care, *i.e.*, by simply reading the document and/or by requesting simple changes to the written offer before acceptance." *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13); 144 So. 3d 791, 814 (citing *Scott v. Bank of Coushatta*, 512 So. 2d 356, 362-63 (La. 1987) (noting that "other Louisiana cases have rejected the defense of unilateral error where the complaining party, through education or experience, had the knowledge or expertise to easily rectify or discover the error complained of") (citations omitted); *Tweedel v. Brasseaux*, 433 So. 2d 133, 137 (La. 1983) (noting that "[i]f a party can read, it behooves him to examine an instrument before signing it; and if he cannot read, it behooves him to have the instrument read to him and listen attentively whilst this is being done" and that "[t]he presumption is that parties are aware of the contents of writings to which they have affixed their signatures . . . the burden of proof is upon them to establish with reasonable certainty that they have been deceived") (citations omitted)).

Plaintiffs' consent to the release was not vitiated by error.

### c. EMOTIONAL PRESSURE

In Louisiana, "[e]conomic stress and emotional stress do not constitute legal duress . . . ." *Sid-Mar's Rest. & Lounge, Inc. v. Gardner*, 02-1109, p. 8 (La. App. 5 Cir. 3/25/03); 844 So. 2d 178, 183 (citing LA. CIV. CODE ANN. art. 1959; *Aubert v. Entergy Corp.*,

00-30 (La. App. 5 Cir. 5/30/00); 762 So. 2d 288, 291; *Adams v. Adams*, 503 So. 2d 1052, 1057 (La. App. 2 Cir. 1987)).

Even though Plaintiffs claimed in their complaint that they only signed the release because they were under "emotional pressure" to assist Decedent, they do not argue in their opposition memorandum that this is a basis for nullifying the release. Because Louisiana courts find that emotional stress does not amount to legal duress and Plaintiffs do not argue that their consent was vitiated on this basis, the Court finds that it is not a sufficient basis for declaring the release null.

### d. COMPENSATION

The release specifically provides that Plaintiffs "acknowledge that they have received good and valuable consideration for their release of their possible future wrongful death claims . . . ." Rec. Doc. 9-2 at 2.

Defendant argues that compensation was to be paid by it to Decedent and Plaintiffs jointly and that Defendant "had no role in deciding how the recipients would divide that payment amongst themselves." Rec. Doc. 9-1 at 9. Further, in *Daigle*, where the plaintiffs executed a release in favor of the defendants "in order to induce certain defendants . . . to make a compromise settlement with their father," the Louisiana Supreme Court affirmed that "the waiver of a prospective wrongful death claim by enumerated statutory beneficiaries is valid and should be given res judicata

effect," assuming that there was no vice of consent. 613 So. 2d at 620-21.

Plaintiffs argue that, because they were not represented by independent counsel, "no one negotiated for or protected their separate and individual claims that might arise upon the death of [Decedent]." Rec. Doc. 13 at 5. In other words, the amount purportedly recited in the release was negotiated by Decedent's counsel for Decedent's claim only "and no further negotiations took place for the benefit of Plaintiffs." *Id.* at 8. They argue that they "received **no** portion of the 'consideration' for releasing their claims." *Id.*

First, Plaintiffs signed a document explicitly stating that they received compensation in exchange for releasing their claims against Defendant. Second, "a compromise cannot be rescinded on grounds of . . . lesion." LA. CIV. CODE ANN. art. 3082.

## IV.   <u>CONCLUSION</u>

Plaintiffs' claim that the release is relatively null is barred by Louisiana Civil Code article 2032. Even if it were not barred, Plaintiffs' consent to the release was not vitiated by error, fraud, or duress. The release is not null; it effectively released Defendant American Optical from liability for wrongful death claims arising from the death of Plaintiffs' husband/father. Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Rec. Doc. 9) is **GRANTED**. Plaintiffs' claims against Defendant American Optical Corporation are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this 28th day of March, 2017.

SENIOR UNITED STATES DISTRICT JUDGE